# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

---

**No. ACM S32804**

---

**UNITED STATES**
*Appellee*

**v.**

**Jacob A. GRANT**
Airman Basic (E-1), U.S. Air Force, *Appellant*

---

Appeal from the United States Air Force Trial Judiciary

Decided 17 July 2026

---

*Military Judge*: Christopher D. James.

*Sentence*: Sentence adjudged on 11 April 2024 by SpCM convened at Kunsan Air Base, Republic of Korea. Sentence entered by military judge on 6 May 2024: Bad-conduct discharge, confinement for 90 days, and a reprimand.

*For Appellant*: Major Thomas R. Govan, Jr., USAF; Major Trevor N. Ward, USAF.

*For Appellee*: Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before MORGAN, GRUEN, and KEARLEY, *Appellate Military Judges*.

Senior Judge GRUEN delivered the opinion of the court,[1] in which Chief Judge MORGAN and Judge KEARLEY joined.

---

[1] Captain Caston Casey, an intern assigned to the court under the Air Force Internship Program and supervised by an attorney admitted to practice before this court, participated in the preparation of this opinion with Senior Judge Gruen.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

GRUEN, Senior Judge:

A military judge sitting alone as a special court-martial convicted Appellant, in accordance with his pleas, of three specifications of wrongful broadcast of an intimate visual image, in violation of Article 117a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 917a.[2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 90 days, and a reprimand. The convening authority took no action on the findings and sentence but provided the language for the reprimand.

Appellant raises two issues on appeal: (1) whether Appellant was subject to the personal jurisdiction of the court-martial; and (2) whether appropriate sentencing relief is warranted because of the 249-day delay between sentencing and docketing with this court.

We affirm the findings and sentence and find no error that materially prejudiced Appellant's substantial rights.

## I. BACKGROUND

Appellant and BD had a non-exclusive, intimate relationship from around mid-2020 to March 2022. During this time, both Appellant and BD were active-duty Air Force members. While in this relationship, BD sent Appellant nude images and videos that Appellant saved to his phone. Appellant and BD also consensually recorded intimate sexual acts on Appellant's phone.

On or about 23 November 2021, BD expressed to Appellant through a written text via the social media application "Snapchat" that she did not want Appellant "posting" any images depicting BD. In January 2023, BD discovered visual images, to include videos, of her face visible while engaging in sexual acts with Appellant on various public social media platforms. The videos were posted on divers occasions between on or about 2 December 2022 and 7 December 2022; on or about 15 December 2022; and on divers occasions between on or about 23 January 2023 and 1 April 2023. These posts form the basis for the three specifications of wrongful broadcast charged against Appellant.

---

[2] Unless otherwise noted, references in this opinion to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

The charge and specifications were preferred on 28 June 2023, and referred to a general court-martial on 11 October 2023. They were later withdrawn but not dismissed. Pursuant to a plea agreement, they were re-referred to a special court martial on 2 April 2024. Appellant elected to be tried by military judge alone and pleaded guilty to wrongfully broadcasting BD's intimate images without BD's consent. Appellant's special court-martial commenced on 10 April 2024, and he was sentenced by the military judge on 11 April 2024 to a bad-conduct discharge, confinement for 90 days, and a reprimand.

## II. DISCUSSION

### A. Jurisdiction

Appellant argues that he was not subject to the jurisdiction of the court-martial because he had received a DD Form 214, and "[t]he Air Force never placed a hold on Appellant" to extend his expiration of term of service (ETS), and had received a final paycheck prior to the commencement of the court-martial.

### 1. Additional Background

Appellant entered active-duty service on 29 January 2019. Appellant's expiration of term of service (ETS) was 28 March 2024.

Despite Appellant's ETS occurring on 28 March 2024, and despite the fact that no hold was placed on Appellant's account to extend his ETS, Appellant signed a stipulation of fact on 29 March 2024, indicating that he was an active-duty member of the United States Air Force. The stipulation of fact also detailed that the court-martial had both personal and subject-matter jurisdiction over Appellant. The stipulation of fact was signed by Appellant's trial defense counsel on 29 March 2024 and 31 March 2024. As part of the plea agreement, the charge and its specifications were re-referred to a special court-martial on 2 April 2024.

Appellant received notice via email, at approximately 0206 hours on 10 April 2024, that his Department of Defense Form 214 (DD Form 214) would be available within 24 hours of such notification—a few hours before the court-martial was to begin. At the time of the court-martial, Appellant had not begun out-processing from his unit and did not have an out-processing checklist loaded into virtual military personal flight (vMPF). Appellant had been out-processed from medical and dental prior to the court-martial but the medical out-processing system is separate from the military personal flight (MPF) process. Appellant had not out-processed with finance and a final financial accounting had not yet been completed for Appellant.

Appellant had recently renewed his CAC prior to his court-martial and appeared for the proceedings in his service dress uniform. Appellant's *Care*

inquiry[3] revealed that Appellant had received his DD Form 214. The military judge *sua sponte* heard additional facts from both trial counsel and trial defense counsel. Both parties agreed to the following facts submitted to the military judge: (1) Appellant's ETS occurred on 28 March 2024, with Appellant's DD Form 214 available for download at approximately 0206 on 10 April 2024; (2) Appellant had received a paycheck covering pay periods prior to Appellant's ETS, however, the 8th Comptroller Squadron identified that Appellant's account still required review and Appellant had not received a final accounting of pay; and (3) Appellant had not out-processed with his unit or the finance office. Appellant did not have a unit out-processing checklist loaded on vMPF.[4]

The military judge ultimately held that the Air Force had jurisdiction over Appellant for the court-martial proceedings due to the totality of the circumstances. The military judge issued a written ruling on 6 May 2024 and attached that ruling to the entry of judgment.

**2. Law**

We review issues of court-martial jurisdiction de novo. *United States v. Hale,* 78 M.J. 268, 270 (C.A.A.F. 2019) (citing *EV v. United States*, 75 M.J. 331, 333 (C.A.A.F. 2016)). Challenges to jurisdiction not raised at trial are not waived and may be raised for the first time on appeal. *See* Rule for Courts-Martial (R.C.M.) 907(b)(1); *United States v. Reid*, 46 M.J. 236, 240 (C.A.A.F. 1997).

When action with a view to trial is taken against a person, court-martial jurisdiction attaches over that person and "shall continue for all purposes of trial, sentence, and punishment, notwithstanding the expiration of that person's term of service[.]" R.C.M. 202(c)(1). "Actions by which court-martial jurisdiction attaches include: apprehension; imposition of restraint, such as restriction, arrest, or confinement; and preferral of charges." R.C.M. 202(c)(2). "If jurisdiction has attached before the effective terminal date of self-executing orders, the person may be held for trial by court-martial beyond the effective terminal date." *See* R.C.M. 202(c)(1), Discussion.

Jurisdiction over an accused is lost upon a member's discharge from the service, but "the UCMJ does not state when a servicemember's discharge from the armed forces becomes effective for jurisdictional purposes[.]" *United States*

---

[3] *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

[4] Appellant had out-processed from the medical and dental clinics at Kunsan Air Base, however, that a separate and distinct process from out-processing from his unit or finance.

*v. Christensen*, 78 M.J. 1, 4 (C.A.A.F. 2018). There are three criteria for determining whether a servicemember is effectively discharged for jurisdictional purposes: "(1) the delivery of a discharge certificate (a DD Form 214); (2) a 'final accounting of pay'; and (3) the completion of the 'clearing' process that is required under service regulations." *Id.* (quoting *United States v. Hart*, 66 M.J. 273, 276–79 (C.A.A.F. 2008)). However, these criteria are guidance that is not binding when contrary to "reason or policy." *Id.* (quoting *United States v. Nettles*, 74 M.J. 289, 291 (C.A.A.F. 2015)).

"[I]f one or more of these criteria have not been fully met, then the military trial judge must consider the totality of the circumstances in making a jurisdictional determination." *Id.* at 5 n.6 (citing *Nettles*, 74 M.J. at 291). In analyzing the totality of the circumstances, the United States Court of Appeals for the Armed Forces (CAAF) has looked at an appellant's "objectively reasonable belief" that he is no longer a servicemember. *Id.* at 5.

### 3. Analysis

We conclude that Appellant was not effectively discharged from the Air Force for purposes of court-martial jurisdiction.

Starting with the three criteria, the CAAF has identified for analyzing whether a servicemember is effectively discharged for jurisdictional purposes, Appellant's receipt of a DD Form 214 weighs in his favor. However, the remaining factors are not met as Appellant did not receive a final accounting of pay, nor did he complete out-processing from his unit, with no evidence of any unreasonable delay by the military. Because "one or more of these criteria have not been fully met," we "consider the totality of the circumstances in making a jurisdictional determination." *Christensen*, 78 M.J. at 5. The totality of the circumstances indicates that Appellant was not fully discharged from the Air Force.

The facts display circumstances showing that Appellant objectively believed he was still in the Air Force at the time of the court-martial. In particular, Appellant and his trial defense counsel signed and dated a stipulation of fact for the court-martial after Appellant's ETS had passed. While a "hold" for Appellant's service was never accomplished in the military personnel system to extend the ETS, charges were preferred against Appellant on 28 June 2023 with a view towards court-martial. In accordance with Appellant's plea agreement, the charges and specifications were withdrawn, but not dismissed, and re-referred to a special court-martial on 2 April 2024, with his consent. Although the re-referral occurred after Appellant's ETS, circumstances show that all parties believed Appellant was still an active member of the Air Force by fulfilling actions aligning with Appellant's plea agreement. Additionally, Appellant's command did not dismiss the charges, which indicates there was no commander's intent to discharge Appellant prior to the court-martial.

Appellant urges this court to follow the CAAF's 1997 ruling in *Smith v. Vanderbush* where jurisdiction was not recognized when an ETS and discharge had occurred, without a Government-initiated hold, between preferral of charges and commencement of court-martial. 47 M.J. 56, 61 (C.A.A.F. 1997). However, *Vanderbush* differs from the case at bar in that the appellant had completed a computation of final pay, out-processed his unit, received a discharge certificate, and believed he was discharged from the Army to the extent that he left the Republic of Korea, where the court-martial was to be held, and returned to the United States via a government-procured airline ticket. *Id.* at 57. With *Vanderbush* not present for the court-martial, a jurisdictional issue was immediately raised by defense counsel resulting in a determination that in fact, that court-martial had no jurisdiction. *Id.*

Appellant's case is distinguishable from *Vanderbush*, because even after Appellant's ETS had passed, Appellant believed he was still an active-member of the Air Force by failing to complete out-processing, renewing his CAC for the purposes of attending the court-martial, and arriving to the court-martial in service dress to plead guilty to the charges originally preferred against him on 28 June 2023. While not waived, the jurisdictional issue was not raised by the parties and only discussed when prompted by the military judge during Appellant's *Care* inquiry. It appears that all parties believed that there was jurisdiction over Appellant for the purposes of court-martial proceedings and that Appellant was an active member of the Air Force throughout. The totality of the circumstances leads to the conclusion that Appellant was subject to the personal jurisdiction of the court-martial.

## B. Post-Trial Delay

Appellant argues the Government violated his right to speedy post-trial review in taking 249 days from the announcement of sentence to the docketing of Appellant's record of trial (ROT) with this court—99 days longer than the 150-day standard established by law.

### 1. Additional Background

The post-trial chronologies provided by the court reporter in the ROT, and the details provided in the Government's answer, establish the following timeline for post-trial processing:

> 11 April 2024 (Day 0): The sentence is adjudged.
>
> 11 April 2024 (Day 0): Appellant completed AF Form 304 requesting Appellate Defense Counsel
>
> 19 April 2024 (Day 8): Appellant submits clemency request.
>
> 25 April 2024 (Day 14): Convening authority signs the convening authority decision on action memorandum (CADAM).

6 May 2024 (Day 25): Military judge signs the entry of judgment.

13 May 2024 (Day 32): Court reporter began transcribing Appellant's trial transcript.

30 May 2024 (Day 49): Court reporter signed ROT Certification memo.

29 July 2024 (Day 109): Court reporter began sending parts of Appellant's transcript to both trial counsel and defense counsel for review.

7 August 2024 (Day 118): Court reporter sends the final part of Appellant's trial transcript to both trial counsel and defense counsel for review.

8 August 2024 (Day 119): Both trial counsel and defense counsel provide transcript edits to the court reporter.

8 August 2024 (Day 119): Trial counsel certifies Appellant's trial transcript.

9 August 2024 (Day 120): Defense counsel certifies review of Appellant's trial transcript.

9 August 2024 (Day 120): Court reporter certifies Appellant's trial transcript.

9 September 2024 (Day 151): Legal office distributed copies of the record.

16 September 2024 (Day 158): Legal office sent record to 7 AF/JA.

11 December 2024 (Day 244): 7 AF/JA sent record to Military Justice Policy Division (JAJM).

12 December 2024 (Day 245): JAJM delivered record to this court.

16 December 2024 (Day 249): The ROT is docketed with this court.

11 May 2026 (Day 760): Appellant files his assignment of errors, after requesting and receiving fourteen (14) enlargements of time (EOT) (over Government opposition).

## 2. Law

We review whether an appellant's due process rights are violated because of post-trial delay de novo. *United States v. Livak*, 80 M.J. 631, 633 (C.A.A.F. 2020).

Servicemembers have a due process right to timely review and appeal of courts-martial convictions. *United States v. Moreno*, 63 M.J. 129, 132 (C.A.A.F. 2006) (citing *Toohey v. United States*, 60 M.J. 100, 101 (C.A.A.F. 2004)). In *Moreno,* the CAAF identified thresholds for facially unreasonable delay during the post-trial and appellate process when: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record was not docketed with the CCA within 30 days of the convening authority's action, an (3) the CCA did not render a decision within 18 months of docketing. *Id.* at 142–43. This court has established a timely review standard through a 150-day threshold from aggregated sentence-to-docketing for facially unreasonable delay in cases referred to trial on or after 1 January 2019. *Livak*, 80 M.J. at 633.

If there is a presumptive or facially unreasonable delay, the matter is examined under four non-exclusive factors: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

The three types of prejudice arising from post-trial delays identified in *Moreno* are: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of a convicted person's grounds for appeal and ability to present a defense at a rehearing. *Moreno*, 63 M.J. at 138–139.

Each factor is analyzed to determine whether the respective factor favors the Government or Appellant. *Id.* at 136. The court then "balance[s] our analysis of the factors" to make the determination on whether a due process violation has occurred. *Id.* (citing *Barker*, 407 U.S. at 533).

"No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* (citing *Barker*, 407 U.S. at 533). However, there is no due process violation if the appellant has not shown prejudice from the delay unless "the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

In any case before this court with proper jurisdiction, "the [c]ourt may provide appropriate relief if the accused demonstrates error or excessive delay in the processing of the court-martial after the judgment was entered into the record[.]"10 U.S.C. § 866(d)(2). Such relief means that which is "suitable considering the facts and circumstances of th[e] case." *United States v. Valentin-Andino*, 85 M.J. 361, 367 (C.A.A.F. 2025). The relief provided does not have to be objectively meaningful and this court is not required to "explain its reasoning regarding the relief" it provides. *Id.* at 367.

**3. Analysis**

Analyzing the delay under the *Barker* factors, both the length of delay and reasons for the delay weigh in favor of Appellant.

First, as the time from sentencing to docketing with this court exceeds the *Livak* threshold by 99 days, and we have exceeded the 18-month threshold by less than a month, the delay is facially unreasonable.

Second, the Government has not provided a compelling reason for the delay from sentencing to docketing with this court. In their answer, the Government points to the court reporter completing duties for eleven other cases as a reason for the 120 days post-trial to the certifying of the trial transcript. However, the additional 125 days from certifying the transcript to delivery of the record to this court largely goes unanswered—the only explanation given was an administrative delay that was not "intentionally or negligently dilatory."

However, the remaining factors of Appellant's assertion of the right to timely review and appeal and prejudice weigh in favor of the Government. The record does not reflect that Appellant has asserted a right to timely review, with the record showing that Appellant was aware of a right to a timely appeal but consented to fourteen EOTs after his case was docketed with this court. Appellant does not raise prejudice nor that the delay has violated his due process right to timely appeal. Further, oppressive incarceration, anxiety, concern, impairment of Appellant's grounds for appeal and ability to present a defense at a rehearing are not raised by Appellant. Balancing all four factors, despite the 99-day delay being unreasonable and chalked up as due to administrative reasons, Appellant has not been prejudiced and a due process violation has not occurred. Therefore, appropriate relief is not warranted.

### III. CONCLUSION

The findings are correct in law. *See* Article 66(d), UCMJ, 10 U.S.C. § 866(d) (*Manual for Courts-Martial, United States* (2024 ed.). In addition, the sentence as entered is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court